UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

PHILIP FARRELLY,                                        Index No.

                             Plaintiff,

                                        **COMPLAINT**

    -against-

AVALONBAY COMMUNITIES, INC.

                                         Jury Trial Demand

                          Defendant
------------------------------------------------------------

      Plaintiff, Philip Farrelly ("Plaintiff"), by his attorney, THE LAW OFFICE OF JON A. STOCKMAN, as and for his Complaint, respectfully alleges the following:

## NATURE OF THE CASE

1.      Plaintiff brings this action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et seq.* (hereinafter "the ADA"), the Age Discrimination in Employment Act (hereinafter the "ADEA"), and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (hereinafter "NYSHRL").

## JURISDICTION

2.      This Court has subject matter jurisdiction over this action and jurisdiction over Defendant AvalonBay Communities, Inc. pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim occurred within this judicial district and because Plaintiff resides in this judicial district.

1

## PROCEDURAL REQUIREMENTS

4.      Plaintiff timely filed a charge against Defendant AvalonBay Communities, Inc. with the United States Equal Employment Opportunity Commission ("EEOC") within three hundred (300) days of the discriminatory acts complained of herein.  Plaintiff's EEOC Charge (Charge No. 520-2019-03082) relates to the allegations set forth in this Complaint.  A true and accurate copy of Plaintiff's EEOC Charge (Charge No. 520-2019-03082) is attached hereto as **Exhibit A**.

5.      On or about November 27, 2019, the EEOC mailed Plaintiff a Right to Sue letter relating to Plaintiff's aforementioned EEOC Charge.  A copy of the Right to Sue letter is attached hereto as **Exhibit B**.

6.      This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter.

## THE PARTIES

7.      Plaintiff is a resident of the State of New York, County of Nassau.

8.      At all times relevant to the Complaint, Plaintiff was an "employee" of Defendant AvalonBay Communities, Inc. within the meaning of the ADA, the ADEA, and the NYSHRL.

9.      Upon information and belief, Defendant AvalonBay Communities, Inc. (hereinafter "Defendant") is and was a foreign business corporation licensed to do business in the State of New York with its principal offices located at 671 N Glebe Rd, Ste 800, Arlington, Virginia 22203.

10.      According to its website, Defendant "is an equity REIT in the business of developing, redeveloping, acquiring and managing multifamily communities primarily in New

England, the New York/New Jersey metro area, the Mid-Atlantic, the Pacific Northwest, and Northern and Southern California."

11.     According to its website, "as of December 31, 2019 [Defendant] owned or held a direct or indirect ownership interest in 297 apartment communities containing 86,846 apartment homes in 11 states and the District of Columbia…"

12.     Defendant is/was a publicly traded company.

13.     At all times relevant to the Complaint, Defendant was Plaintiff's "employer" within the meaning of the ADA, the ADEA, and the NYSHRL.

14.     At all times relevant to the Complaint, Defendant employed more than fifty (50) employees.

15.     At all times relevant to the Complaint, Defendant engaged in interstate commerce.

16.     At all times relevant to the Complaint, Defendant employed more than four (4) employees in the State of New York.

## FACTS

17.     Plaintiff was employed by Defendant as a Building Maintenance Tech II at Defendant's residential property in Garden City, NY from in or around May, 2016 until he was unlawfully terminated in June, 2018.

18.     Plaintiff was fifty-five (55) years old at the time of his termination.

### *Plaintiff's Qualifications*

19.     Throughout Plaintiff's tenure with Defendant, he possessed the requisite qualifications to be employed as a Building Maintenance Tech II.

20.     Throughout Plaintiff's tenure with Defendant, Plaintiff performed well as a Building Maintenance Tech II.

3

21.     Throughout Plaintiff's tenure with Defendant, Plaintiff performed the essential functions of the Building Maintenance Tech II position in a highly competent manner.

22.     Plaintiff's duties "included diagnosing and repairing problems in such areas as HVAC, electrical, plumbing, completing assigned service requests and repairs, and conducting apartment preventative maintenance."  Plaintiff was highly capable of performing these duties. Plaintiff performed his duties in a highly competent manner and without issue.

23.     In Plaintiff's 2017 Year End Performance Check-In (Plaintiff's last annual performance review prior to his termination), Plaintiff's supervisor, Michael Barone complimented Plaintiff's performance.  For example, Mr. Barone wrote Plaintiff "has a pretty good skillset for a Tech II.  He has certainly learned the Westbury systems and is fairly adept at making on the spot repairs."

24.     Although Mr. Barone addressed some areas where Plaintiff could make improvements, a reasonable takeaway from Plaintiff's 2017 Year End Performance Check-In is that Plaintiff performed well despite not being given proper guidance and that Plaintiff could perform even better if given the proper guidance.

25.     Notably, Mr. Barone stated "Phil does everything that is asked of him.  He does it without complaint and without issue.  The direction he has been given as it pertains to Preventative Maintenance has been somewhat flawed.  As a result of that misdirection, PM's at the property have suffered.  There is no fault on Phils part and I see nothing that indicates he will be anything less than successful at this task once directed properly."

### *Plaintiff's Disability*

26.     On March 20, 2017, Plaintiff sustained a serious head injury at work after a garage door fell on his head.  Plaintiff experienced headaches, white noise tinnitus, dizziness,

4

and ringing in his ears.   Additionally, Plaintiff also experienced seizures.   Plaintiff's aforementioned head injury substantially impaired and is continuing to substantially impair his ability to learn, concentrate, and think.

27.   Moreover, Plaintiff's head injury substantially impaired and is continuing to substantially impair his short term memory.   Additionally, Plaintiff's head injury substantially impaired his ability to articulate his thoughts.   After the aforementioned accident, Plaintiff had and continues to have significant trouble thinking of the correct words to say.   Notably, Plaintiff filed a workers compensation claim (Claim # 188599453-001) based on his work related head injury.

28.   Plaintiff indicated to Chris Clark (his direct supervisor) that he was getting stuck on words due to his head injury. Plaintiff also indicated to Rod Deavey (another Maintenance Technician who upon information and belief influenced Plaintiff's termination) that he was getting stuck on words due to his head injury.

29.   In or around December, 2017, Plaintiff informed Michael Barone that he suffered hearing loss as a result of the aforementioned work place accident.

30.   In or around June, 2018, Plaintiff informed Carridad Rodriguez (Defendant's Daily Manager) that he was experiencing seizures, head aches, and getting stuck on words as a result of the aforementioned work accident.   Plaintiff also communicated his intention to seek the assistance of an attorney and communicated his fear that discussing his medical issues could have an adverse impact on his employment.

### Plaintiff's Termination

31.   Less than a week after Plaintiff's conversation with Ms. Rodriguez about his medical issues, Defendant terminated Plaintiff without legitimate reason.

32.     Upon information and belief, Defendant replaced Plaintiff with a non-disabled individual under the age of forty (40).  Plaintiff believes this allegation to be true given that Defendant has not refuted this allegation.

33.     At the time of termination, Defendant indicated that Plaintiff was being terminated for "thinking about" using an O-Ring in response to a sink leak.  Notably, Plaintiff did not actually use an O-Ring, but even if he had, using an O-Ring would have fixed the problem without issue.

34.     Upon information and belief, it was Rod Deavey that reported Plaintiff to management for thinking about using an O-Ring in response to a sink leak.  Meanwhile, Plaintiff personally heard Mr. Deavey instruct Shane (a Building Maintenance Tech II at the Garden City property who upon information and belief is in his 20s and is non-disabled, is not perceived by Defendant as being disabled, and does not have a record of being disabled known to Defendant) to use an O-Ring to fix a sink leak on more than one occasion.  Shane was not terminated for using an O-Ring to fix a sink leak.

35.     Defendant also alleges that it terminated Plaintiff's employment for failing to turn off all the heaters at the Garden City Property on June 17, 2018 after being instructed to do so and for lying to Defendant about having turned off all the heaters.

36.     Defendant's allegation that Plaintiff failed to turn off all the heaters at the Garden City Property on June 17, 2018 is false.  Plaintiff turned off all the heaters at the Garden City Property on June 17, 2018 either by turning off the respective switch or by turning off the respective breaker.  Notably, on or about June 18, 2018, Rod Deavey indicated to Plaintiff that Mr. Deavey had turned on breakers that Plaintiff had shut off.  When Plaintiff questioned Mr.

Deavey why he turned on the breakers when the heaters had to be off, Mr. Deavey indicated that the hallway lights were cross-wired into the heater switches and the lights had to be turned on.

37.     Upon information and belief, Mr. Deavey failed to disclose to Defendant that he turned on heaters that Plaintiff had shut off.

38.     At the meeting during which Defendant terminated Plaintiff's employment, Plaintiff explained to Mr. Barone and Ms. Rodriguez that he turned off all the heaters on June 17, 2018 and that Mr. Deavey turned on some of the heaters that Plaintiff shut off.  Despite this, Defendant carried out Plaintiff's termination nonetheless.

39.     Although Defendant may allege it terminated Plaintiff for putting Defendant's property at risk, Plaintiff did not put Defendant's property at risk.  Moreover, Defendant treated younger and/or non-disabled employees more favorably than Plaintiff.

40.     Notably, Defendant did not terminate the employment of Nick Lee (a Building Maintenance Tech II at Defendant's Garden City property who upon information and belief is in his 20s and is non-disabled, is not perceived by Defendant as being disabled, and does not have a record of being disabled known to Defendant) after he failed to respond to a water leak at the Garden City property, resulting in significant property damage.

41.     Moreover, Defendant did not terminate Sammy Che (a Building Maintenance Tech II at Defendant's Garden City property who upon information and belief is non-disabled, is not perceived by Defendant as being disabled, and does not have a record of being disabled known to Defendant) for driving a golf cart into a Mercedes-Benz, which upon information and belief cost Defendant over twenty-thousand dollars.

42.     Notably, there were a number of times where Mr. Deavey either lied to Defendant about Plaintiff or failed to disclose important information.  For example, in support of

Defendant's argument that Plaintiff failed to properly perform tasks assigned to him, Defendant cited an alleged incident that allegedly occurred on or about May 30, 2018 where Plaintiff allegedly failed to change an angle stop valve in a refrigerator after Mr. Deavey explained to Plaintiff he needed to do so.  This allegation is false; Mr. Deavey did not tell Plaintiff to change the angle stop valve.  Upon information and belief, it was Mr. Deavey that reported this false allegation to Defendant.

43.     Upon information and belief, Mr. Deavey did not make false allegations to Defendant about co-workers similarly situated to Plaintiff (such as Shane and Nick Lee) who were non-disabled and under the age of forty (40).  The basis of Plaintiff's belief is that he is unaware of Mr. Deavey having made false allegations to Defendant about non-disabled co-workers and co-workers under the age of forty (40).

44.     A reasonable person could conclude that (i) Mr. Deavey harbored animus against older co-workers and/or disabled co-workers; (ii) Mr. Deavey intentionally provided false information to Defendant with the intention of getting Plaintiff fired (because of Plaintiff's age and/or disability); and (iii) the false information provided by Mr. Deavey influenced Defendant's decision to terminate Plaintiff.  Accordingly, a reasonable person could *inter alia* conclude that Defendant is liable for age discrimination and disability discrimination under the cat's paw theory.

45.     A reasonable person could conclude that Defendant is liable for age discrimination and disability discrimination given that Defendant terminated Plaintiff for a false reason and (upon information and belief) replaced him with a non-disabled person under the age of forty (40).

46. Additionally, a reasonable person could conclude that Defendant is liable for age discrimination and disability discrimination due to the fact that Defendant treated employees similarly situated to Plaintiff (such as Nick Lee and Sammy Che) more favorably for actually causing property damage than Plaintiff, when Plaintiff's actions did not actually result in property damage.

47. Defendant claims that it was Michael Barone that decided to terminate Plaintiff. A reasonable person could conclude that Michael Barone's decision was motivated by discriminatory animus *inter alia* given that Plaintiff was terminated for a false reason, given that Plaintiff informed Mr. Barone that Defendant's justification was false, and given that (upon information and belief) Plaintiff was replaced by a non-disabled person under the age of forty (40).

48. Likewise, a reasonable person could conclude that Michael Barone's decision was motivated by discriminatory animus *inter alia* given that Plaintiff was treated less favorably than similarly situated employees outside one or more of Plaintiff's protected classes (such as Nick Lee and Sammy Che).

49. Given that Ms. Rodriguez was present at Plaintiff's termination meeting, discovery may also reveal that Ms. Rodriguez was involved in the decision to terminate Plaintiff (regardless of whether she was the ultimate decisionmaker).

### FIRST CLAIM FOR RELIEF
*(Violation of the ADA-Discrimination Based On Disability/Perceived Disability/Record of Disability)*

50. Plaintiff repeats and realleges each and every allegation contained herein.

51. Defendant violated the ADA by terminating Plaintiff based on his aforementioned disability, perceived disability, and/or record of having a disability.

52.     Defendant violated the ADA because Plaintiff's aforementioned disability, perceived disability, and/or record of having a disability played a role in Defendant's decision to terminate Plaintiff.

53.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings and related employment benefits.

54.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

55.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

56.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff because of his disability, perceived disability, and/or record of having a disability, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included an anti-discrimination policy in their employee manual and (upon information and belief) posted the anti-discrimination notices required by law.

### SECOND CLAIM FOR RELIEF
*(Violation of the ADEA by Defendant-Discrimination Based On Age)*

57.     Plaintiff repeats and realleges each and every allegation contained herein.

58.     Defendant violated the ADEA by terminating Plaintiff based on his age.

59.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings and related employment benefits.

60. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

61. Plaintiff is entitled to an award for damages for his past and future economic loss in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

62. Plaintiff is also entitled to ADEA liquidated damages in an amount equal to his backpay and frontpay because Defendant's violation of the ADEA was willful.

### THIRD CLAIM FOR RELIEF
*(Violation of the NYSHRL -Discrimination Based On Disability/Perceived Disability/Record of Disability)*

63. Plaintiff repeats and realleges each and every allegation contained herein.

64. Defendant violated the NYSHRL by terminating Plaintiff based on his aforementioned disability, perceived disability, and/or record of having a disability.

65. Defendant violated the NYSHRL because Plaintiff's aforementioned disability, perceived disability, and/or record of having a disability played a role in Defendant's decision to terminate Plaintiff.

66. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings and related employment benefits.

67. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

68. Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

69.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff because of his disability, perceived disability, and/or record of having a disability, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included an anti-discrimination policy in their employee manual and (upon information and belief) posted the anti-discrimination notices required by law.

### FOURTH  CLAIM FOR RELIEF
*(Violation of the NYSHRL-Discrimination Based On Age)*

70.     Plaintiff repeats and realleges each and every allegation contained herein.

71.     Defendant violated the NYSHRL by terminating Plaintiff based on his age.

72.     Defendant violated the NYSHRL because Plaintiff's age played a role in Defendant's decision to terminate Plaintiff.

73.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings and related employment benefits.

74.     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered emotional distress.

75.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

76.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff because of his age, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information

and belief, Defendant included an anti-discrimination policy in their employee manual and (upon information and belief) posted the anti-discrimination notices required by law.

### DEMAND FOR JURY TRIAL

77.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendant herein alleged, Plaintiff demands judgment as follows:

i.      awarding emotional distress damages in the estimated sum of at least $125,000.00;

ii.     awarding back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendant's unlawful actions in the estimated sum of at least $500,000.00;

iii.    awarding Plaintiff $300,000.00 in punitive damages pursuant to the ADA;

iv.     awarding Plaintiff ADEA liquidated damages in the estimated sum of at least $500,000.00;

v.      awarding Plaintiff at least $1,000,000.00 in punitive damages pursuant to the NYSHRL;

vi.     awarding Plaintiff's cost of this suit;

vii.    awarding reasonable attorneys' fees;

viii.   awarding pre- and post-judgment interest; and

ix.    awarding such other and further relief as the court deems just and proper.

Dated: New York, New York
February 19, 2020

*Respectfully submitted*,
**THE LAW OFFICE OF**
**JON A. STOCKMAN**

By:    <u>/S/Jon A. Stockman</u>
Jon A. Stockman, Esq. (JS6246)
32 Broadway, Suite 1710
New York, New York 10004
(516) 547-6418 telephone
jstockman@yournycattorney.com
Attorney for Plaintiff Philip Farrelly

**EXHIBIT A**

# THE LAW OFFICE OF JON A. STOCKMAN

32 Broadway, Suite 1710
New York, NY 10004
www.yournycattorney.com
Telephone: (516) 547-6418
Fax: (212) 693-2167
Email: jstockman@yournycattorney.com

April 10, 2019

**Via Hand Delivery**
United States Equal Employment Opportunity Commission
33 Whitehall St, 5th Floor
New York, NY 10004

      Re:    Philip Farrelly v. AvalonBay Communities, Inc.

Dear Sir or Madam:

I represent Complainant Philip Farrelly.   I have respectfully enclosed one (1) original and three (3) copies of Mr. Farrelly's Charge against AvalonBay Communities, Inc.   Please direct all correspondence regarding this matter to your undersigned.

                               Respectfully submitted,

                               /S/Jon A. Stockman, Esq.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

APR 1 0 2019

DATE RECEIVED

NEW YORK DISTRICT OFFICE

APR 10 2019

DATE RECEIVED

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>_X_ EEOC | |

| NYSDHR | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr. Ms. Mrs.)<br>Philip Farrelly | Home Phone (Incl. Area Code)<br>(516) 374-0225 | Date of Birth<br>██/1963 |
|---|---|---|
| Street Address<br>781 Hampton Rd, Woodmere, NY 11598 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>AvalonBay Communities, Inc. | No. Employees, Members<br>More than 50 | Phone No. (Include Area Code)<br>(866) 231-5215 |
|---|---|---|
| Street Address<br>998 Stewart Avenue Garden City, NY 11530 (Location where Mr. Farrelly worked) | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address<br>2901 Sabre Street,, Suite 100, Virginia Beach VA 23452 (AvalonBay Communities, Inc. Corporate Headquarters) | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE   __ COLOR   __ SEX __ RELIGION   __ NATIONAL ORIGIN | Earliest          Latest<br>On or about 6/24/2018 |
| __ RETALIATION _x_ AGE __X DISABILITY   __ OTHER (Specify below.)<br>Discrimination based on perceived disability/record of being disabled | __ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

Philip Farrelly was employed by AvalonBay Communities, Inc. (hereinafter "the Company") as a Building Maintenance Tech II at the Company's property in Garden City, NY from in or around May, 2016 until he was unlawfully terminated in June, 2018. Mr. Farrelly was fifty-five (55) years old at the time of his termination.

Based on the circumstances surrounding Mr. Farrelly's termination, a reasonable jury could conclude the Company's decision to terminate Mr. Farrelly violated the Age Discrimination in Employment Act, Americans with Disabilities Act, the New York State Human Rights Law, and the New York Workers Compensation Law. On March 20, 2017, Mr. Farrelly sustained a serious head injury at work after a garage door fell on his head. Mr. Farrelly experienced headaches, white noise tinnitus, dizziness, and ringing in his ears. Additionally, Mr. Farrelly also experienced seizures. Mr. Farelly's aforementioned head injury substantially impaired and is continuing to substantially impair his ability to learn, concentrate, and think. Moreover, Mr. Farrelly's head injury substantially impaired and is continuing to substantially impair his short term memory. Additionally, Mr. Farrelly's head injury substantially impaired his ability to articulate his thoughts. After the aforementioned accident, Mr. Farrelly had and continues to have significant trouble thinking of the correct words to say. Notably, Mr. Farrelly filed a workers compensation claim (Claim # 188599453-001) based on his work related head injury.

Mr. Farrelly indicated to Chris Clark (his direct supervisor) that he was getting stuck on words due to his head injury. Mr. Farrelly also indicated to Rod Deavey (a co-worker that it appears the Company is claiming was Mr. Farrelly's supervisor) that he was getting stuck on words due to his head injury. In or around June, 2018, Mr. Farrelly informed Carridad Rodriguez (the Company's Daily Manager) that he was experiencing seizures, head aches, and getting stuck on words as a result of the aforementioned work accident. Mr. Farrelly also communicated his intention to seek the assistance of an attorney and communicated his fear that discussing his

medical issues could have an adverse impact on his employment.  Less than a week after Mr. Farrelly's conversation with Ms. Rodriguez about his medical issues, the Company terminated Mr. Farrelly without legitimate reason.  The Company indicated that Mr. Farrelly was being terminated for "thinking about" using an O-Ring in response to a sink leak.  Notably, Mr. Farrelly did not actually use an O-Ring, but even if he had, using an O-Ring would have fixed the problem without issue.

Upon information and belief, it was Rod Deavey that reported Mr. Farrelly to management for thinking about using an O-Ring in response to a sink leak.  Meanwhile, Mr. Farrelly personally heard Mr. Deavey instruct Shane (a Building Maintenance Tech II at the Garden City property who upon information and belief is in his 20s and is non-disabled, is not perceived by the Company as being disabled, and does not have a record of being disabled known to the Company) to use an O-Ring to fix a sink leak on more than one occasion.  Shane was not terminated for using an O-Ring to fix a sink leak.

 Upon information and belief, the Company replaced Mr. Farrelly with a non-disabled individual under the age of forty (40).  Notably, the Company did not terminate the employment of Nick Lee (a Building Maintenance Tech II at the Company's Garden City property who upon information and belief is in his 20s and is non-disabled, is not perceived by the Company as being disabled, and does not have a record of being disabled known to the Company) after he failed to respond to a water leak at the Garden City property, resulting in significant property damage.  Moreover, the Company did not terminate Sammy Che (a Building Maintenance Tech II at the Company's Garden City property who upon information and belief is non-disabled, is not perceived by the Company as being disabled, and does not have a record of being disabled known to the Company) for driving a golf cart into a Mercedes-Benz, which upon information and belief cost the Company over twenty-thousand dollars.  It is believed that discovery will reveal that there were additional younger and/or non-disabled employees similarly situated to Mr. Farrelly who were not terminated by the Company for causing property damage.  Meanwhile, the Company allegedly terminated Mr. Farrelly for communicating an idea that the Company alleges would have resulted in a continued water leak even though Mr. Farrelly did not actually carry out the idea and even though it would have fixed the problem.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| --- | --- |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLANANT |
| 4/8/2019 _Philip Farrelly_ <br> Date _____ Charging Party Signature | x _Philip Farrelly_ <br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) April 8 2019 |

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

APR 1 0 2019

DATE RECEIVED

ANGELLA ADAMSON
Notary Public - State of New York
NO. 01AD6136962
Qualified in Nassau County
My Commission Expires Nov 14, 2021

**EXHIBIT B**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
New York Status Line: (866) 408-8075
New York Direct Dial: (212) 336-3630
TTY (212) 336-3622
FAX (212) 336-3625

November 27, 2019

Philip Farrelly
781 Hampton Road
Woodmere, NY 11598

Re: Philip Farrelly v. AVALON BAY COMMUNITIES, INC.
Charge # 520-2019-03082

Dear Mr. Farrelly,

Enclosed please find the Right to Sue Notice your attorney requested via an email dated
November 8, 2019.

If you wish to file suit in this matter, you must do so within 90 days of your receipt of this notice.

If you have any questions, feel free to contact me at (212) 336-3768.

Sincerely,

Debra L. Richards for
Kevin J. Berry
District Director

Enc.

cc: Jon A. Stockman, Esq.
THE LAW OFFICE OF JON A. STOCKMAN
32 Broadway, Suite 1710
New York, NY 10004

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Philip Farrelly**<br>**781 Hampton Road**<br>**Woodmere, NY 11598** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

|   | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-03082** | **Debra L. Richards,**<br>**Investigator** | **(929) 506-5307** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| [X] | More than 180 days have passed since the filing of this charge. |
| [ ] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [X] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin S. Berry* (signature)

**Kevin J. Berry,**
**District Director**

11/27/2019

*(Date Mailed)*

Enclosures(s)

cc: **Steven Batchelor**
**Director of National Labor Relations & Human Resources**
**AVALONBAY COMMUNITIES, INC.**
**1633 Broadway, Suite 22B**
**New York, NY 10019**

**Jon A. Stockman, Esq.**
**THE LAW OFFICE OF JON A. STOCKMAN**
**32 Broadway, Suite 1710**
**New York, NY 10004**

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA): The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

***Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*** For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.